**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

BRITTANY L. GILBERT, :

    Plaintiff, :

vs. : CA 19-0176-MU

ANDREW M. SAUL, :
Commissioner of Social Security,
     :
    Defendant.

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Brittany L. Gilbert brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for child disability benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 16 & 17 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the parties' arguments at the January 28, 2020 hearing before the undersigned, the Court concludes that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 16 & 17 ("An appeal from a judgment
(Continued)

## I. Procedural Background

Plaintiff protectively filed an application for child's insurance benefits on or about July 6, 2016 and protectively filed an application for supplemental security income benefits on May 3, 2016 (*compare* Tr. 16 *with* Tr. 224-40); Plaintiff alleged disability beginning on November 3, 2013 in both applications (Tr. 224 & 231). Gilbert's claims were initially denied on July 7, 2016 (Tr. 84-85 & 145-57) and, following Plaintiff's July 19, 2016 request for a hearing before an Administrative Law Judge ("ALJ") (Tr. 165-67), a hearing—by video—was conducted before an ALJ on March 21, 2018 (Tr. 42-63). Two months prior to the hearing, on January 24, 2018, Plaintiff amended her disability onset date to January 15, 2016. (Tr. 245). On August 9, 2018, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to social security benefits. (Tr. 16-28). More specifically, the ALJ determined at the fifth step of the five-step sequential evaluation process that Gilbert retains the residual functional capacity to perform those sedentary jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 21-28 *with* Tr. 59-60). On August 29, 2018, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (*see* Tr. 220-23); the Appeals Council denied Gilbert's request for review on March 13, 2019 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to Hashimoto encephalopathy, hyperthyroidism, migraine headaches, pseudo-tumor cerebri, Type II diabetes mellitus, obesity, and vertigo. The Administrative Law Judge (ALJ) made the following relevant findings:

---

entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

**1.** Born on November 11, 1994, the claimant had not attained age 22 as of January 15, 2016, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

. . .

**2.** The claimant has not engaged in substantial gainful activity since January 15, 2016, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

. . .

**3.** The claimant has the following severe impairments: Hashimoto encephalopathy; hyperthyroidism; migraine headaches; pseudo-tumor cerebri; diabetes mellitus II; obesity; and vertigo (20 CFR 404.1520(c) and 416.920(c)).

. . .

**4.** The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 404.1525, 416.920(d), 416.925 and 416.926).

. . .

**5.** After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) inclusive of: lifting or carrying 20 pounds occasionally and 10 pounds frequently; sit 6 hours out of an 8 hour day; walk and stand 2 hours out of an 8 hour day; unable to engage in the use of arm or foot controls; frequently reach, handle, finger or feel; occasionally stoop or balance; never climb[] ladders, ropes, scaffolds; could not engage in kneeling[,] crouching or crawling; could not engage in driver automated equipment as part of the job; avoid exposure to dangerous heights and dangerous machinery on a complete basis; occasional exposure to dusts, fumes or gases; limited to understanding, remembering and carrying out short and simple instructions; and would not be able to work at a production pace.

. . .

**6.** The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

> **7. The claimant was born on November 11, 1994 and was 21 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**
>
> **8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**
>
> . . .
>
> **9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).**
>
> **10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969(a)).**
>
> . . .
>
> **11. The claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2016, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g)[,] and 416.920(g)).**

(Tr. 18, 19, 21-22, 26, 27 & 28 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

A claimant is entitled to an award of benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See, e.g.,* 20 C.F.R. § 416.905(a). In determining whether a claimant has met her burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See, e.g.,* 20 C.F.R. § 416.920. At step one, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(b). At the second step, if a claimant does not have an impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities (that is, a severe

impairment), she is not disabled. 20 C.F.R. § 416.920(c). At step three, if a claimant proves that her impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without consideration of age, education and work experience. 20 C.F.R. § 416.920(d). If the claimant is unable to prove the existence of a listed impairment, at the fourth step, the claimant's residual functional capacity is determined, 20 C.F.R. § 416.920(e), and then a determination must be made regarding whether claimant's physical and/or mental impairments prevent her from performing any past relevant work, 20 C.F.R. § 416.920(f). And at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. § 416.920(g). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[2] the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 (11th Cir. May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the

---

[2] *See, e.g., McManus v. Barnhart,* 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.'").[3]

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

On appeal to this Court, Gilbert asserts two reasons the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ's RFC determination is not supported by substantial evidence principally because the ALJ improperly rejected the opinions of her treating pediatric neurologist, Dr. Paul Maertens;

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

and (2) the Appeals Council erred in failing to admit the evidence submitted to it as an exhibit and should have remanded the case to the ALJ for consideration of this new evidence.

A.  **ALJ's RFC Determination and His Consideration of the Opinions of Treating Pediatric Neurologist Dr. Paul Maertens**. Plaintiff attacks the ALJ's RFC determination (*see* Tr. 21-22, Finding 5), and ultimate decision of non-disability, by principally arguing that the ALJ improperly accorded little weight to the opinions of Plaintiff's treating pediatric neurologist, Dr. Paul Maertens.

The responsibility for making the residual functional capacity determination rests with the ALJ. *Compare, e.g.,* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments

and related symptoms." *Watkins v. Commissioner of Social Security,* 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)); *see also* 20 C.F.R. § 404.1545(a)(3) (in assessing RFC, the Commissioner is required to consider "descriptions and observations of [the claimant's] limitations from [] impairments, including limitations that result from [] symptoms, such as pain, provided by [the claimant] . . . ."). Because "[a]n RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments[,]" *Packer, supra,* 542 Fed.Appx. at 891, consideration of a claimant's testimony and credibility is certainly an aspect of any such determination, *see id.* at 892 (in finding that Plaintiff had failed to establish that her RFC assessment was not supported by substantial evidence, the Eleventh Circuit considered, among other matters, the ALJ's consideration of Packer's testimony, specifically the credibility determination).

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported

the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[5] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician"

---

[5] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ could have relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

(internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, the Court finds that the ALJ linked his RFC assessment—that is, light work with numerous limitations[6]—to specific evidence in the record bearing upon Gilbert's ability to perform the physical, mental, sensory and other requirements of work. (*Compare* Tr. 21-22 *with generally* Tr. 47-48, 261-64, 341-47, 357, 365, 377, 429-34, 441-51 & 457-68.) In particular, the ALJ explained in some detail how the medical evidence of record supported the particular components of his RFC determination. (*See id.* at 23-25; *compare id. with* Tr. 21-22). Moreover, despite Plaintiff's argument that the ALJ erred in failing to accord appropriate weight to the opinions of her treating pediatric neurologist, Dr. Paul Maertens, this Court does not agree and finds the ALJ's RFC assessment supported by substantial evidence in the record.

"Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability." *Kahle v. Commissioner of Social Security,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In general, "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Social Sec. Admin.,* 164 Fed.Appx. 919, 923 (11th Cir. Jan. 31, 2006). Indeed, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause"

---

[6] The limitations were such that the vocational expert identified work falling in the sedentary exertional category. (*See* Tr. 60 ("This profile, because of the standing and walking requirements, we're looking at sedentary, unskilled, entry level work with an SVP of 2.")).

is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004) (other citation omitted); *see Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 591 (11th Cir. May 2, 2006) (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam).

The ALJ's analysis of Dr. Maertens' opinions is admittedly a bit hard to follow (*see* Tr. 25-26); however, the following appears to be the critical portion of that analysis:

> [T]o the extent [Dr. Maertens' opinion] is consistent with the longitudinal record (Ex. B1F, symptomology) his opinion is reflected in the residual functional capacity, noting for instance, the claimant is restricted to a light exertional level with her ability to stand further restricted. She is also limited to understanding, remembering and carrying out short and simple instructions and prohibited from performing at a production pace, given her issues with concentration. That said, Dr. Maerten[]s['] opinion warrants an assessment of little weight because it only accounts for two months of the adjudication period (Ex. B3F; B7F, opinion dated March 2016).

> However, Dr. Maerten[s] opined that due to the claimant's condition she could not engage in any form of gainful employment on a repetitive, competitive and productive basis over an[] eight hour day, forty hours a week, without missing more than 2 days of work per month or experiencing frequent interruptions. Despite[] Dr. Marten[]s['] qualifications as an acceptable treating medical source, the undersigned notes that opinions and statements that a claimant is "disabled," "unable to work," or can or cannot perform a past job are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set

11

> forth therein. Such issues are reserved to the Commissioner, who cannot abdicate h[is] statutory responsibility to determine the ultimate issue of disability. Opinions on issues reserved to the Commissioner can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence . . . . Finding no support of record, this portion of Dr. Maerten[]s['] opinion is given little to no weight. The undersigned thus places greater weight on the objective and clinical findings of record, as described above.

(Tr. 26).

The government conceded during oral arguments on January 28, 2020, that the second part of the Maertens' sentence directed to whether the claimant can engage in gainful employment (*see* Tr. 437), specifically the portion about missing work for more than 2 days per month or experiencing frequent interruptions (*id.*), takes the treating pediatric neurologist's opinion out of the realm of a comment on the inability to work (that is, a comment on an issue reserved to the Commissioner) and safely ensconces it as a medical opinion, contrary to what was found by the ALJ (*see* Tr. 26). This concession, however, does not translate into a remand in favor of the Plaintiff in this case because the ALJ stated elsewhere that he was rejecting Dr. Maertens' various opinions because the treating pediatric neurologist completed the form on March 28, 2016 (*see, e.g.,* Tr. 437-40), a mere two months after the amended disability onset date (*compare id. with* Tr. 26). Moreover, the ALJ also rejected Maertens' various opinions because they were not supported by the record as a whole, or were contradicted by persuasive evidence, and the ALJ chose to place greater weight on the objective and clinical findings of record. (Tr. 26).

This Court agrees with the ALJ that because Dr. Maertens' opinions only account for two months of the period of adjudication they do not provide a sufficient basis upon

which to find Plaintiff disabled, since the definition of disability presupposes that an individual is unable to engage in substantial gainful activity for a continuous period of not less than 12 months. *See, e.g.,* 20 C.F.R. § 416.905(a). And, here, it bears noting that after Plaintiff's office visit to Dr. Maertens on March 28, 2016 (*see* Tr. 429-30), Gilbert appears to have been evaluated by Dr. Maertens on only one occasion thereafter, on October 4, 2016 (Tr. 441-42), a date upon which the plan included referral to the YMCA (*id.* at 442). The referral of Plaintiff to the YMCA appears to the Court to be inherently inconsistent with Dr. Martens' expressed opinion in March of 2016 that physical activities (including, walking and movement of extremities) would greatly increase her pain to such an extent at to cause distraction from task or total abandonment of task (*compare id. with* Tr. 439). In addition, the ALJ correctly observed that Dr. Maertens' opinions are not bolstered by the record evidence as a whole and, indeed, the record evidence supports contrary findings. The relevant objective findings of various neurologists who examined Plaintiff after she got to an age where she could not be treated by Dr. Maertens, at all times have been grossly normal (Tr. 445-46, 462-63 & 467-68).[7] Moreover, even accepting counsel's statement during oral argument that Plaintiff's primary care physician, Dr. James R. Dixon (*see* Tr. 429 (Dr. Maertens' clinic notes refer to Dr. Dixon as Plaintiff's primary care physician)), did not treat Plaintiff's migraines and dizziness (*see* Tr. 447-52 & 457-60), such recognition does not necessitate that the undersigned ignore the contents of Dr. Dixon's clinic notes, which include Dr. Dixon's consistent notations that Plaintiff denied migraines and vertigo (Tr.

---

[7] In addition, Plaintiff's description of her daily activities (*see generally* Tr. 260-66) and, in particular, the notation that she has absolutely no problem with personal care (Tr. 261), provides further support for the ALJ's RFC determination.

13

447, 450, 457 & 459) and that, on physical examination, Plaintiff was in no acute distress, her gait and station were normal, and neurological exam revealed "CN 2-12 intact" (Tr. 447-48, 450-51, 457 & 459). And, finally, it bears noting that Dr. Maertens' various opinions are rendered in cursory and conclusory fill-in-the-blank or "circled" format with absolutely no explanatory comment provided on the forms (*see* Tr. 437-40) or in the treatment notes completed concurrent therewith (*see* Tr. 429-30). For instance, when Dr. Maertens opined that Plaintiff could not engage in any form of gainful employment over an 8-hour workday, forty hours a week, without missing more than 2 days per month or experiencing frequent interruptions in her work routine, he simply check-marked "No" without providing any explanation, though given ample space to do so (Tr. 437), nor did he attempt to quantify the affect Plaintiff's headaches would have on her abilities to concentrate or persist on a particular task (Tr. 438).

Based on the foregoing discussion, the undersigned finds that the ALJ's decision to afford little weight to the opinions expressed by Dr. Maertens on March 28, 2016 is supported by substantial evidence and, as a consequence, also finds the ALJ's RFC determination supported by substantial evidence. As aforesaid, the ALJ explained in detail how the medical evidence of record supported the particular components of his RFC determination and, therefore, properly linked his RFC assessment to specific evidence in the record bearing upon Gilbert's ability to perform the physical, mental, sensory and other requirements of work.

  **B.**   <u>**New Evidence Submitted to the Appeals Council.**</u> Gilbert's only other assignment of error is that the Appeals Council erred in failing to exhibit the Stanton Road Clinic medical records from May of 2018 through August of 2018 submitted to it and in

failing to remand the case to the ALJ based on these records. Although the Stanton Road Clinic records were not exhibited by the Appeals Council, they are part of the administrative transcript (*see* Tr. 34-41); therefore, any "error" in failing to exhibit the records is harmless. In its review decision dated March 13, 2019, the Appeals Council commented on the additional evidence submitted to it, as follows: "You submitted evidence from Stanton Road Clinic, dated May 31, 2018 through August 24, 2018 (8 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2).

The Eleventh Circuit has made clear that "[w]ith few exceptions, the claimant is allowed to present new evidence at each stage of th[e] administrative [review] process[,]" including before the Appeals Council. *Ingram v. Commissioner of Social Security Admin.,* 496 F.3d 1253, 1261 (11th Cir. 2007). And while the Appeals Council has the discretion not to review the ALJ's denial of benefits, *Flowers v. Commissioner of Social Sec.,* 441 Fed.Appx. 735, 745 (11th Cir. Sept. 30, 2011), it "must consider new, material, and chronologically relevant evidence" submitted by the claimant. *Ingram, supra,* 496 F.3d at 1261*; see also* 20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.").

> The new evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen,* 823 F.2d 456, 459 (11th Cir. 1987) (citations omitted). It is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). If these conditions are satisfied, the Appeals Council [] must then review the case to see whether the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id.*

*Ring v. Berryhill,* 2017 WL 992174, *4 (N.D. Ala. Mar. 15, 2017), *aff'd,* 728 Fed.Appx. 966 (11th Cir. Mar. 23, 2018).

In *Flowers, supra,* the Eleventh Circuit made clear that "[w]hen a claimant properly presents new evidence, and the Appeals Council denies review, the Appeals Council must show in its written denial that it has adequately evaluated the new evidence." 441 Fed.Appx. at 745 (citation omitted). Indeed, "[i]f the Appeals Council merely 'perfunctorily adhere[s]' to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence and we must remand 'for a determination of [the claimant's] disability eligibility reached on the total record.'" *Id.,* quoting *Epps v. Harris,* 624 F.2d 1267, 1273 (5th Cir. 1980). The panel in *Flowers* ultimately concluded that the Appeals Council did not adequately consider the new evidence submitted by the claimant because "apart from acknowledging that Flowers had submitted new evidence, the Appeals Council made no further mention of it or attempt to evaluate it." *Id.*

However, since the decision in *Flowers*, subsequent panels of the Eleventh Circuit have indicated that where the Appeals Council accepts a claimant's new evidence but denies "review because the additional evidence fail[s] to establish error in the ALJ's decision[,]" that administrative body adequately evaluates the new evidence. *Mitchell v. Commissioner, Social Sec. Admin.,* 771 F.3d 780, 784 (11th Cir. 2014); *see also Beavers v. Social Sec. Admin., Commissioner,* 601 Fed.Appx. 818, 822 (11th Cir. Feb. 9, 2015) ("Here, the Appeals Council denied Worthy's petition for review, stating, as it did in *Mitchell*, that it had considered Worthy's reasons for disagreeing with the ALJ's decision and her new evidence, but found that the new evidence did not provide a basis for changing the ALJ's decision. Under *Mitchell*, no further explanation was required of the

Appeals Council."). Indeed, the *Mitchell* panel noted that the Appeals Council "was not required to provide a detailed rationale for denying review." 771 F.3d at 784; *see also id.* at 784-85 ("We note that our conclusion that the Appeals Council is not required to explain its rationale for denying a request for review is consistent with the holdings of other circuits that have considered this issue.").

These subsequent panel cases leave the viability of *Flowers* questionable given that, as noted by the court in *Flowers*, the Appeals Council "stated that it had considered Flowers's reasons for her disagreement with the ALJ's decision and her additional evidence[]" but "concluded 'that this information does not provide a basis for changing the Administrative Law Judge's decision.'" 441 Fed.Appx. at 740. This, of course, is the exact Appeals Council rationale upheld by later Eleventh Circuit panels in *Mitchell* and *Beavers* without need for further explanation/evaluation. *Compare id. with Mitchell supra,* 771 F.3d at 784-85 and *Beavers, supra,* 601 Fed.Appx. at 822.

With these principles in mind, the Court turns to Plaintiff's argument relative to the Appeals Council's treatment of the medical records submitted to it, Plaintiff again arguing that the Appeals Council erred in failing to remand the case for proper consideration of the additional neurological records from Stanton Road Clinic. (Doc. 13, at 6-7). In making this argument, Plaintiff provides a summary of these records (*id.* at 7) and argues that the records show a worsening in of Plaintiff's vertigo symptoms and medication changes due to ineffective migraine treatment and, therefore, support Dr. Maertens' opinions (*id.*).

This Court too has reviewed the records from Stanton Road Clinic dated May 31, 2018 and August 24, 2018 and cannot agree with Plaintiff that these records show a worsening in Plaintiff's vertigo to a degree that supports Dr. Maertens' various opinions

17

and would suggest a reasonable probability that the outcome of the administrative decision would be changed. This is because the Stanton Road Clinic records simply reflect that Plaintiff's vertigo happens only once or twice per week and each time for only one minute (Tr. 34), evidence which is consistent with (not inconsistent with) record evidence from Stanton Road Clinic before the ALJ at the time of the administrative decision (*compare id. with* Tr. 444, 461-62 & 465-66). And it is because the ALJ had similar evidence before him at the time of the administrative decision that the Court finds that the Appeals Council did not err in determining that the new evidence did not establish "a reasonable probability that it would change the outcome of the decision." (Tr. 2.)[8]

There being no other claims of error asserted, the Court finds that the Commissioner's final decision denying Gilbert benefits is due to be affirmed.

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 6th day of March, 2020.

        s/P. Bradley Murray
        **UNITED STATES MAGISTRATE JUDGE**

---

[8] To the extent Plaintiff's new evidence arguments can be read to implicitly suggest that the Appeals Council did not demonstrate that it adequately evaluated the new evidence under controlling caselaw, the undersigned would reject any such implicit argument because the language utilized by the Appeals Council in this case (*see* Tr. 2 ("We find this evidence does not show a reasonable probability that it would change the outcome of the decision.")) is consistent with numerous Eleventh Circuit cases decided in the wake of *Flowers, supra. See, e.g., Mitchell, supra,* 771 F.3d at 782 & 785 (upholding Appeals Council's statement that the additional information "did not provide a basis for changing the ALJ's decision[]" and further explaining that "the Appeals Council is not required to explain its rationale when denying a request for review.").